OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas, wherein appellant, Lana Martin ("Martin"), appeals the entering of summary judgment in favor of appellees, Mike Lovasz Agency ("Lovasz"), and American Family Insurance Company ("AFI").
 {¶ 2} The following facts are derived from depositions taken from Martin and Lovasz. In October 2000, Martin visited her OB/GYN with respect to a lump in her abdomen. The lump was diagnosed as a uterine cyst. During that same visit, Martin's doctor noticed an "irregular mole" on her back and suggested she make an appointment with a dermatologist for further examination. Martin scheduled an appointment with a dermatologist for February 26, 2001.
 {¶ 3} On January 23, 2001, Martin applied for health insurance with Lovasz, an agent for AFI. Lovasz met with Martin at her place of business, and Lovasz wrote down all the information Martin supplied regarding the health insurance application. Martin informed Lovasz of the uterine tumor that was diagnosed in October 2000, during her visit to her OB/GYN. There was no discussion regarding the irregular mole or the dermatologic referral. At that time, Martin provided Lovasz with the name, address, and telephone number of her physician and, also, executed a medical release, permitting AFI to obtain medical information from Martin's physicians.
 {¶ 4} At the close of the questioning, Martin paid her health insurance premium. She was notified at that time that she might be interviewed by telephone by a representative of AFI regarding questions they may have about information given in the application.
 {¶ 5} On February 17, 2001, the telephone interview was conducted. Martin testified that the questions were the same or similar to those asked by Lovasz while he took her application. Notes from the telephone interview, contained in the record, reveal that attention was given to Martin's "alcohol habit" and the fact that she had been seen by a doctor for a "female checkup in 10/2000." No other medical information was detailed.
 {¶ 6} Martin met with the dermatologist on February 26, 2001. A biopsy of the mole was performed at that time. According to her deposition testimony, Martin telephoned Lovasz approximately one week later to inquire about her health insurance coverage. Lovasz informed her that she had coverage as of January 23, 2001. Martin testified at her deposition that she could not recall whether she told Lovasz that she had been to the dermatologist for a consultation. On March 8, 2001, a few days after Martin confirmed the existence of healthcare coverage with Lovasz, Martin was notified that the mole biopsy resulted in a diagnosis of malignant melanoma.
 {¶ 7} On March 12, 2001, Martin received a formal copy of her health insurance policy through regular mail. AFI continued to provide insurance coverage to Martin until July 2001, when Martin attempted to use a prescription card, issued by AFI to obtain a prescription to counteract the nausea induced by chemotherapy. Insurance coverage for that prescription was denied, and Martin was told she did not have insurance coverage.
 {¶ 8} On August 4, 2001, AFI returned Martin's health insurance premium along with a letter notifying her that her health insurance policy had been rescinded. Martin subsequently filed a complaint on October 29, 2001, in the Lake County Court of Common Pleas, against both Lovasz and AFI, asserting a claim for both breach of contract and bad faith.
 {¶ 9} Appellees filed a counterclaim for declaratory relief, seeking rescission of the policy issued to Martin, alleging that Martin provided "willfully false" statements regarding her medical history, upon which appellees relied when providing health insurance coverage.
 {¶ 10} Appellees subsequently moved for summary judgment relating to both appellant's complaint and the declaratory judgment action. In a judgment entry dated October 24, 2002, the trial court entered summary judgment in favor of appellees.
 {¶ 11} Martin filed this timely appeal, citing two assignments of error:
 {¶ 12} "[1.] The trial court erred in granting the appellees' motion for summary judgment with respect to the claims of appellee, American Family Ins.
 {¶ 13} "[2.] The trial court erred in granting appellees' motion for summary judgment with respect to the claims against appellee, Mike Lovasz."
 {¶ 14} While both of appellant's assignments of error relate to each appellee separately, they are predicated on the same facts. Therefore, we shall address both assignments at once.
 {¶ 15} Appellant contends that the trial court erred in entering summary judgment in favor of both Lovasz and AFI. We begin by noting that, pursuant to Civ.R. 56(C), summary judgment is proper when, after construing the evidence in the light most favorable to the nonmoving party, there remains no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party seeking summary judgment must point to some evidence affirmatively demonstrating that the nonmoving party has no evidence to support its claims.[1]
 {¶ 16} R.C. 3923.14, governing false statements in an application for health insurance, provides, in pertinent part:
 {¶ 17} "The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued."
 {¶ 18} Thus, the statute contains a five-part test an insurer must satisfy in order to cancel a health insurance policy. This court has previously ruled on R.C. 3923.14 and determined that each of the elements contained within the statute must be shown by clear and convincing evidence.[2] Clear and convincing evidence is that degree of proof which is more than a mere preponderance, but does not rise to the level of certainty required beyond a reasonable doubt in the criminal context. "Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."[3]
 {¶ 19} Hence, the insurer must prove the statement, (1) is willfully false; (2) is fraudulently made; (3) materially affects the risk assumed; (4) induced the insurer to issue the policy; and (5) but for such false statement the policy would not have been issued.
 {¶ 20} In their motion for summary judgment, appellees contended that Martin failed to disclose a medical condition which was ultimately diagnosed as malignant melanoma. Specifically, appellees asserted that Martin responded "no" when asked if she had previously been "advised to plan or receive treatment, follow-up care, hospitalization or surgery which has not been completed." Appellees also contended that Martin answered "no" when asked if she had "any indication of cancer, tumor, cyst or any mental or physical illness, disease or injury not previously indicated." Finally, appellees asserted that Martin answered "no" when asked if she had a "scheduled medical appointment or condition which may need medical attention." Thus, appellees contended that the AFI policy issued to Martin was properly rescinded and was void ab initio.
 {¶ 21} In response, Martin maintained that she never provided any false information at any time during the underwriting process. Martin asserted that Lovasz questioned her and wrote down all responses on the application. Martin also asserted that since she provided AFI with medical releases, any information regarding her medical history was at their disposal and she was not attempting to conceal any medical conditions.
 {¶ 22} The trial court concluded that "Defendants have pointed to significant evidence which affirmatively demonstrates that Plaintiff has no evidence to support her claims for breach of contract and bad faith. Further, the Court also finds that Plaintiff has failed to set forth any facts showing that there is a genuine issue for trial." We disagree.
 {¶ 23} As noted above, in order for the insurer to rescind a health insurance policy, it must prove, by clear and convincing evidence, that the insured provided information that was willfully false, that the statement was fraudulently made, that it materially affected the risk assumed, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued.
 {¶ 24} A careful examination of the facts and their chronology is necessary for an adequate review. Martin was first made aware of the "irregular mole" on her back after a visit to her OB/GYN in October 2000. A recommendation was made at that time by her physician for a dermatology evaluation. That evaluation was scheduled for February 26, 2001. Martin sought the insurance coverage on January 23, 2001. A telephone interview with AFI was conducted on February 17, 2001. The dermatology evaluation took place on February 26, 2001. One week later, Martin was reassured by Lovasz that her health insurance was in place, effective January 23, 2001. The diagnosis of malignant melanoma was made on March 8, 2001. The insurance was subsequently rescinded in August 2001.
 {¶ 25} Turning our attention to the specific questions at issue, the first question appellees cite is whether Martin had previously been "advised to plan or receive treatment, follow-up care, hospitalization or surgery which has not been completed." At the time that question was asked, Martin was aware that she was to see a dermatologist for the mole, and it is unclear from the facts whether she notified Lovasz or AFI of that pending appointment at any time.
 {¶ 26} The second question cited was whether Martin had "any indication of cancer, tumor, cyst or any mental or physical illness, disease or injury not previously indicated." At the time of the application and underwriting, Martin had not been to see the dermatologist for the initial visit and had not received any diagnosis for the mole. Therefore, she clearly could not respond to this question affirmatively at that time.
 {¶ 27} The third question was whether Martin had a "scheduled medical appointment or condition which may need medical attention." At the time of questioning, Martin was aware that her OB/GYN referred her to a dermatologist. It is not clear from the record whether that appointment had been scheduled at that time.
 {¶ 28} Moreover, it is also important to note that Martin contacted Lovasz after her initial dermatologic evaluation to inquire whether she had healthcare insurance coverage. Lovasz responded that it was "no problem" and that the coverage was effective January 23, 2001. Also of note is the fact that Martin had signed medical releases, which granted AFI permission to inquire about Martin's medical history with her physicians.
 {¶ 29} We are hard-pressed to conclude, based on all of the information regarding Martin's medical history at their disposal, along with the fact that Martin inquired into whether she had coverage based on the dermatology visit, that Martin attempted, in any way, to conceal her medical condition from appellees. Appellees maintained the burden of demonstrating, by clear and convincing evidence, all five components of the test set forth in the statute, in order to establish that rescission of the health insurance policy was proper.
 {¶ 30} Reviewing the evidence in a light most favorable to Martin, reasonable minds could not come to but one conclusion and appellees failed to establish, by clear and convincing evidence, an intent by Martin to defraud appellees by concealing her medical history. Therefore, the trial court erred in entering summary judgment in favor of appellees.
 {¶ 31} Martin's first and second assignments of error are with merit. The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.
Rice, J., concurs.
Grendell, J., concurs in judgment only.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Prudential Ins. Co. of Am. v. Vitantonio (Mar. 31, 1982), 11th Dist. No. 8-117, 1982 Ohio App. LEXIS 13457, at *3.
[3] (Citation omitted.) In re Thurlby (June 15, 2001), 11th Dist. No. 2000-A-0088, 2001 Ohio App. LEXIS 2714, at * 9.